STATE

v.

Donna DRAKE.

No. 96–481–C.A.

Supreme Court of Rhode Island.

June 9, 1997.

Annie Goldberg, Aaron Weisman, Providence, for Plaintiff.

Catherine A. Gibran, Paula Rosin, Providence, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

PER CURIAM.

This matter came before the Court pursuant to an order directing both parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the briefs of the parties and hearing oral arguments thereon, we conclude that cause has not been shown and will proceed to decide this appeal summarily at this time.

The defendant, Donna J. Drake (Drake), appeals from a conviction entered in the Providence County Superior Court for two counts of assault with a dangerous weapon.[1] She alleges that the trial justice committed reversible error in denying her motion in limine in which she sought to conduct a voir dire examination of a police officer on a contested issue.

The facts in this case indicate that on January 1, 1995, at approximately 4 a.m. town of Johnston Sergeant Michael Calenda (Calenda) and Patrolman Robert Argenti (Argenti) were independently dispatched to 14 Westwood Manor in that town following a 911 "hang-up call" from that residence. Calenda and Argenti arrived at the scene at about the same time as a third officer, Patrolman Leonard Andrews.

Calenda and Argenti testified during the state's case in chief. According to Calenda and Argenti, while outside Drake's apartment and knocking on the door, the officers heard a great deal of banging and the sound of a woman's voice screaming, "Mario, if you come any closer, I'll f—— stab you." When no one answered their door knocks, the officers proceeded to kick the door open and entered the apartment. Calenda and Argenti testified they observed that the apartment was in a state of total disarray, with cushions lying off the sofa and chairs turned over.

The officers proceeded to the bedroom where they observed a man, who was later identified as Mario Narsisi (Narsisi), huddled in the corner of the room. They also observed Drake crouched on top of a bed with a blanket over her legs. The officers testified that Drake appeared to be hysterical and that when she saw the police, she told them that Narsisi had slapped her on the face.

1. Drake was initially charged with three counts of assault with a dangerous weapon, but one count was dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

They further testified that they observed red marks on Drake's face.

According to the testimony of Calenda and Argenti, when they placed Narsisi under arrest and began to usher him out of the bedroom, Drake stood up on the bed, brandishing a nine-inch kitchen knife, and screamed: "I can't take it anymore. I'll kill Mario. I will kill the f——— Johnston cops." Drake did not move toward the officers, however; and when she was distracted, the police wrestled her to the ground, took away the knife, and handcuffed her.

Narsisi testified on behalf of Drake. He explained that Drake did not brandish a knife at the police. Instead, Narsisi testified that the only time he saw a knife that morning was when he observed one of the police officers carrying a knife out of the apartment. Narsisi further testified that the police used excessive force in arresting both him and Drake.

The trial jury convicted Drake of both counts of assault with a dangerous weapon. She appeals to this Court, now, contending that the trial justice improperly denied her pretrial motion in limine.

Drake had moved in limine to conduct a pretrial voir dire examination of Calenda. The basis of her motion was that Drake wanted to question Calenda regarding his alleged previous checkered work history and to use that evidence to discredit any trial testimony that he might later give. Counsel for Drake stated that he had reason to believe Calenda had an extensive record of using excessive force in effectuating arrests while formerly employed as a police officer in the town of Scituate but that he had no official evidence to substantiate his belief. Drake's attorney therefore requested the trial justice to permit him to conduct a voir dire examination outside the presence of the jury in order to investigate and, he hoped, to confirm and substantiate Calenda's previous poor work history. It was Drake's belief that Calenda, along with Argenti and Andrews, had used excessive force in arresting her and had then manufactured the assault charge to cover up their actions. The state objected to the voir dire motion on the grounds that any evidence that might be elicited by Drake was irrelevant and would be too remote to be admissible.

The trial justice denied the motion in limine, reasoning that when Calenda was to be called as a witness in the upcoming trial Drake would then have full opportunity to cross-examine Calenda regarding any abusive conduct at that time. The trial justice further opined that he would then be in a better position during the trial to properly assess the admissibility of Calenda's suspected prior bad-acts evidence.

Drake asserts that because the trial justice denied her motion in limine, her trial counsel was effectively barred from inquiring about Calenda's employment record because he did not know what information might be elicited. The net effect of that denial, Drake contends, was that she was prevented from defending the charges against her on the ground that they were fabricated. Drake points this Court to *State v. Bennett,* 122 R.I. 276, 405 A.2d 1181 (1979) and *State v. Lariviere,* 527 A.2d 648 (R.I.1987), to support her claim that the trial justice's denial was improper. Neither case is apposite. Those cases dealt with the circumstance where a defendant, in order to decide whether he should testify, sought to determine prior to trial whether his known prior convictions would be admitted at trial. We have held that a motion in limine is available for that purpose, as well as others. *See, e.g., Bennett,* 122 R.I. at 286, 405 A.2d at 1187. In this case Drake did not seek to exclude evidence of her prior convictions in order to decide whether she should testify. She instead sought to conduct a dress rehearsal of her counsel's questioning of Calenda, and to hopefully discover impeaching evidence for purposes of later cross-examining Calenda before the trial jury, and thus *Lariviere* and *Bennett* are of no benefit to her.

The trial justice did not err in precluding Drake's voir dire request. The fact that her attorney might unfortunately stumble into unknown dangerous territory during any cross-examination of Calenda is one of the perils generally associated with inadequate pretrial investigation and discovery and does not require a trial justice to grant all requests for pretrial voir dire hearings. We

discern no abuse of discretion in the trial justice's refusal to grant the pretrial voir dire hearing request.

For the foregoing reasons Drake's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in this matter are remanded to the Superior Court.

GOLDBERG, J., did not participate.